Filed 7/22/21  Tran v. 2000 Senter Road, LLC CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BA TRAN, Plaintiff and Appellant, v. 2000 SENTER ROAD, LLC, Defendant and Respondent. | D078576, D078577 (Super. Ct. No. 114CV260736) |

CONSOLIDATED APPEALS from a judgment of the Superior Court of Santa Clara, Mark H. Pierce, Judge.  Affirmed.

The Veen Firm, Elinor M. Leary, Kimberly A. Wong; Law Office of Joseph S. May, Joseph S. May; Law Office of Valerie T. McGinty and Valerie T. McGinty for Plaintiff and Appellant.

Cholakian & Associates, Kevin Cholakian, Colin H. Jewell; Hayes, Scott, Bonino, Ellingson, Guslani, Simonson & Clause, Mark G. Bonino and Ryan P. Snyder for Defendant and Respondent.

# I

## INTRODUCTION

Thirty-seven-year old Viet Tran (Viet) was shot and killed by unknown assailants outside a commercial warehouse that a tenant was using as an illegal nightclub.[1] Viet's mother, Ba Tran (Ba), filed a premises liability action against the owner of the warehouse, 2000 Senter Road, LLC (Senter Road). She alleged Senter Road was negligent for failing to evict the tenant who operated the nightclub, failing to hire security guards to monitor the premises, and failing to notify law enforcement about the nightclub. After a trial, a jury returned a special verdict finding that Senter Road was not negligent and judgment was entered in favor of Senter Road.

Ba appeals the judgment and claims it must be reversed due to three evidentiary errors. First, she challenges the trial court's exclusion of bank records showing that cash deposits totaling $106,600 were made into Senter Road's bank account—deposits that, according to Ba, were kickback payments from the tenant in furtherance of his illegal nightclub operation. Second, Ba argues the court erred in admitting evidence that Viet was a member or associate of the South Vietnam (SVN) criminal street gang. Third, Ba contends the court erred when it admitted an unredacted version of the lease agreement between Senter Road and its tenant, which included a provision stating Senter Road was not liable for injury to the tenant's invitees.

We conclude the trial court's evidentiary rulings did not constitute reversible error. Therefore, we affirm the judgment.

---

[1] Several individuals involved in this case share the surname Tran. After we introduce these individuals by their full names, we will refer to them by their first names only. No disrespect is intended.

2

## II

## BACKGROUND

### A

Senter Road owned a 54,000-square foot, eight-unit commercial warehouse in San Jose. Husband Tan Lu and wife Anh Du are the sole members of Senter Road. Their son-in-law David Castaneda was the property manager of the warehouse.

In March 2009, Senter Road leased an 11,420-square foot unit in the warehouse to Tam Van Tran (Tommy) and a cotenant for $5,000 per month. When the four-year lease began, the unit consisted of retail space on the first floor, unimproved space on the second floor, and warehouse space in the rear of the unit. The lease stated Tommy would use the unit to perform car stereo, alarm, and window tinting services. He purported to perform these services under the moniker Sound Image.

In 2010, Tommy fell behind on his rent payments. Between April 2010 and February 2011, Senter Road sent Tommy several letters detailing his outstanding rent obligations and demanding payment. Castaneda also spoke regularly with Tommy in person and over the phone regarding his delinquent rent payments. According to Castaneda, Tommy consistently tried to get caught up on his rent, but was never able to pay off the full rent balance.

### B

Sometime after signing the lease, Tommy renovated the upstairs portion of his unit to make it suitable for use as an illegal after-hours nightclub. He added a bar area, bathrooms, and private rooms in which

strippers could entertain patrons.  He also furnished the space with couches, tables, a karaoke machine, televisions, and refrigerators.

In April 2012, Tommy opened his nightclub (which he also called Sound Image) to patrons.  The nightclub was unlicensed and cash-only.  It was typically open each night from 9:00 p.m. to 3:00 a.m., though it sometimes remained open as late as 6:00 or 7:00 a.m.  Waitresses, busboys, a security guard, and several strippers and prostitutes worked at the nightclub.

When the nightclub first opened, it had approximately 30 patrons per night.  By early 2013, it had 50 to 100 patrons per night.  The patrons were predominately, but not exclusively, members of the Vietnamese community.  Members and associates of criminal street gangs, including the Viet Nation and Evil Viet Outlaw (EVO) gangs, regularly attended the nightclub.

At its peak, the nightclub had revenue of $3,000 per weeknight from the sale of alcohol and food.  On weekends, it had revenue of up to $5,000 per night.

C

In mid-2012, Senter Road decided to sell its warehouse.  It accepted an offer to buy the warehouse and a property inspection was scheduled in connection with the sale.

The inspection took place on March 29, 2013, with the inspector, Castaneda, Senter Road's real estate broker, and the buyer in attendance.  During the inspection, Castaneda and the inspector went into the Sound Image unit, walked up to the second floor where Tommy ran his nightclub, and observed the renovations Tommy had made to the upstairs space.

Castaneda testified he was "taken aback" by the renovations, which he claimed were "not permitted" and "not authorized" by Senter Road.  Castaneda testified he "wasn't sure what it was" he was looking at, but he

4

"knew it wasn't supposed to be there." He testified he immediately told Tommy the renovations needed to be removed and the property needed to be returned to its original condition within 30 days, or else Tommy would be evicted. According to Castaneda, Tommy agreed to remove the renovations. Castaneda testified he intended to check in periodically to ensure Tommy was removing the renovations. He testified he intended to consult an attorney about serving Tommy with a notice of default if he delayed or did not remove the renovations.

D

In the early morning hours of April 6, 2013—approximately one week after the inspection—the fatal events giving rise to this lawsuit took place.

On the night of April 5 and the early morning of April 6, the Sound Image nightclub was open to patrons. Approximately 20 EVO gang members were in attendance. At about 2:00 a.m., Viet and a group of his friends arrived at the nightclub. An individual named Jimmy Nguyen was part of the group. According to a law enforcement officer who testified at trial, Nguyen was an associate of the SVN gang.[2]

At some point after Viet, Nguyen, and their friends arrived, Nguyen got into an altercation with some of the EVO gang members. The reason for the altercation is unknown. However, a Sound Image waitress testified that Nguyen was kicked out of the nightclub due to the altercation. Approximately five to seven of Nguyen's friends left with him. The EVO gang members followed Nguyen and his friends out of the nightclub.

A short time later, an exchange of gunfire erupted outside Sound Image. Viet was shot twice and killed during the incident. His body was

---

[2]     A witness who went to the nightclub with Viet denied that Nguyen was a member of SVN.

found in a public street adjacent to the warehouse. Law enforcement was unable to identify the shooter or shooters whose bullets struck Viet. However, they determined that at least two firearms were fired from the direction of the warehouse toward Viet and at least one firearm was fired from the direction of Viet toward the warehouse.

On April 10, 2013—four days after the shooting—Senter Road served Tommy with a notice to pay rent or quit. It stated Tommy's rent was $7,199.00 in arrears. Tommy did not pay the rent and was evicted soon after as part of an unlawful detainer judgment.

E

In February 2014, Ba filed a negligence action against Senter Road, among other defendants. The operative complaint alleged Senter Road was aware that Tommy operated an illegal nightclub on its premises and that the nightclub attracted gang members. It alleged Senter Road was negligent because it did not evict Tommy for his nightclub operation, hire security for the nightclub, or notify law enforcement about the nightclub. According to the complaint, Senter Road's alleged negligence was a proximate cause of Viet's death.[3]

Prior to trial, the parties filed competing motions in limine, three of which are pertinent to this appeal.

In one of the motions in limine, Senter Road sought to exclude bank records that Ba subpoenaed from Senter Road's bank. The records showed four cash deposits totaling $106,600 were made into Senter Road's bank account between June 2012 and February 2013. Ba theorized the deposits

_____

[3]    Ba also brought a negligence claim against Tommy, Tommy's cotenant, Lu, Du, and TK Holdings, Inc., a corporation owned by Lu and Du. She obtained default judgments against Tommy and his cotenant.

were kickback payments from Tommy to Senter Road. According to Ba, the records showed Senter Road was a joint participant in Tommy's nightclub operation.

Senter Road argued the bank records at issue were irrelevant and subject to exclusion under Evidence Code section 352. It asserted there was no corroborating evidence to support Ba's kickback theory, which Senter Road described as "fanciful," "fantastical," and "speculative." Further, it argued the admission of the records would result in undue prejudice and confusion by focusing the jury on the wealth of Senter Road and its members. The trial court agreed with Senter Road, finding the relationship between the deposits and Tommy was "speculative" and the admission of the bank records would be "highly prejudicial." On this basis, the court granted the motion in limine and excluded the bank records.

In the second motion in limine, Ba sought to exclude evidence that Viet was a current member, a former member, or an associate of the SVN gang. She conceded gang evidence theoretically could be relevant to the issue of comparative negligence. However, she claimed gang evidence was not "material" in this particular case because there was no "evidence showing any motive for Viet Tran's death." She also argued the probative value of the gang evidence was substantially outweighed by a likelihood of undue prejudice. The court denied Ba's motion without elaboration.

In the third motion in limine at issue, Ba requested that the lease agreement between Senter Road and Tommy be redacted in part if it was admitted into evidence. She sought redaction of Paragraph 8.8, which states: "**Exemption of [Senter Road] from Liability**. [Senter Road] shall not be liable for injury or damage to the person … of [Tommy], [Tommy's] … invitees, customers, or any other person in or about the Premises … whether

7

the said injury or damage results from conditions arising upon the Premises or upon other portions of the Building, or from other sources or places....." Ba argued this provision had "no effect" on Senter Road's liability and its admission would be "unduly prejudicial, extremely confusing, and improper." The court denied Ba's motion without elaboration.[4]

## F

After the trial court adjudicated the motions in limine, the case proceeded to a jury trial. In accordance with the court's evidentiary rulings, an unredacted version of the lease agreement was admitted into evidence.

Evidence of Viet's membership or association with SVN was admitted into evidence as well. In particular, photographic evidence was admitted showing Viet had a large tattoo of the letters SVN on his back. A law enforcement officer testified an SVN tattoo indicates "that at one time or some point in that person's life, he associated with the criminal street gang, South Vietnam." However, the same officer testified, without further explanation, that his "investigation led [him] to believe that [Viet] was not in the gang at the time" of his death. A second law enforcement officer testified

---

[4] The court also denied Ba's request to redact Paragraph 40, which states: "**Security Measures**. [Tommy] hereby acknowledges that the Rent payable to [Senter Road] hereunder does not include the cost of guard service or other security measures, and that [Senter Road] shall have no obligation whatsoever to provide same. [Tommy] assumes all responsibility for the protection of the Premises, [Tommy], [Tommy's] agents and invitees and their property from the acts of third parties."

In her opening brief, Ba does not argue that the court erred in denying her request to redact this provision. Insofar as Ba makes such an argument in her reply brief, the argument is forfeited. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 (*Julian*) [declining to address cursory argument made for the first time in reply brief].)

he could not determine whether Viet was an active gang member, a former gang member, or an associate of the SVN gang.

Evidence was also elicited regarding whether Senter Road knew, or should have known, about the nightclub prior to the inspection performed in connection with the property sale. A waitress from the nightclub provided extensive testimony on this issue. According to the waitress, Tommy instructed her to keep the nightclub secret from the police and Senter Road at all costs. Tommy reportedly instructed her to describe the nightclub as a private party if she was ever questioned about it. The waitress testified about measures the nightclub took to remain secret as well. She testified the nightclub did not advertise, operated after hours when other businesses were closed, and cleaned up after every night. She further testified that until early 2013, the nightclub required patrons to make reservations to ensure there were no visible lines of patrons outside the warehouse.

In support of her assertion that the shooting was foreseeable, Ba elicited evidence that law enforcement received reports of illegal conduct at or around the warehouse unit on six occasions prior to her son's death. The reports stated there was a "club upstairs" and there had been drug use, nude entertainment, underage alcohol consumption, and altercations on or around the premises. The law enforcement officer who testified about the reports stated he was unaware whether the incidents or the reports were ever communicated to the landlord, Senter Road.

Castaneda and Lu both testified law enforcement never notified them about incidents occurring on Senter Road's property prior to the shooting. Castaneda testified he was unaware of prior criminal conduct at the warehouse, except one or two instances of graffiti. Further, Castaneda

9

testified he was unaware of Tommy's renovations to the unit until the property inspection.

After deliberations, the jury returned a special verdict finding by a vote of 10–2 that Senter Road was not negligent in the use or maintenance of its property. Because this finding mandated entry of judgment in favor of Senter Road, the jury did not return findings on the remaining special verdict questions including whether Senter Road's negligence was a substantial factor in causing Ba's harm, whether the criminal conduct of the shooter(s) was a superseding cause of Ba's harm, whether Viet was negligent, whether Viet's negligence was a substantial factor in causing his own harm, what percentage of responsibility should be allocated between Senter Road, Viet, Tommy, and the shooter(s), and what damages Ba suffered.

## G

After judgment was entered, Ba moved for a new trial. She argued a new trial was warranted, among other reasons, because the admission of the unredacted lease agreement was an irregularity of the court proceedings (Code Civ. Proc., § 657, subd. (1)) and an error in law (*id.*, subd. (7)).

Together with her motion, Ba filed a declaration from a juror. The juror averred the jury was divided "for a long time" on the question of whether Senter Road was negligent, with eight jurors voting it was not negligent and four jurors voting it was negligent. She averred that after "lengthy deliberations, one of the jurors started going through the commercial lease agreement for the Sound Image premises, and some of the jurors started discussing that the lease provisions provided that [ ] Senter Road [ ] could not be liable, and that the other jurors should therefore change their vote from 'yes' to 'no.' " According to the juror, a vote was taken "[s]hortly

10

after," and, "[t]his time, ten jurors voted 'no' " on the question of whether Senter Road was negligent.

The court denied the motion for a new trial.

Ba then filed an ex parte request for reconsideration of the court's denial of her motion for a new trial. She argued there were new or different facts or circumstances warranting reconsideration because she obtained a declaration from a second, previously-unavailable juror. The juror averred the jury was divided on the question of whether Senter Road was negligent. He averred "some of the jurors" who did not believe Senter Road was negligent "argued to the other jurors that the lease contained a provision that provided that the tenant should be responsible and not the landlord." He added that "[s]hortly after … some of the jurors changed their vote" and the jury found, by a 10–2 vote, that Senter Road was not negligent.

The court denied the request for reconsideration.

Ba appeals the judgment.[5]

### III

### DISCUSSION

### A

*Standard of Review*

Ba claims the trial court erred in its rulings on the parties' motions in limine—rulings that excluded Senter Road's bank records, admitted evidence of Viet's gang membership or association, and admitted the unredacted lease agreement between Senter Road and Tommy. We apply an abuse of

---

[5] Ba filed a notice of appeal from the judgment entered after the jury returned its special verdict (appeal No. D078577). She then filed a second notice of appeal from the judgment after the trial court amended it to specify the costs owed by Ba to Senter Road (appeal No. D078576). On our own motion, we ordered that the appeals be consolidated for all purposes.

11

discretion standard of review to these evidentiary rulings. (*Unzueta v. Akopyan* (2019) 42 Cal.App.5th 199, 220; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) "This standard is not met by merely arguing that a different ruling would have been better." (*Shaw*, at p. 281.) Instead, it requires a showing that the trial court "exercised its discretion in an arbitrary, capricious, or patently absurd manner." (*Velasquez v. Centrome, Inc.* (2015) 233 Cal.App.4th 1191, 1211 (*Velasquez*).) "In appeals challenging discretionary trial court rulings, it is the appellant's burden to establish an abuse of discretion." (*Shaw*, at p. 281.)

Even if we conclude the trial court abused its discretion, we will not reverse the judgment unless the error resulted in a miscarriage of justice. (Cal. Const. art. VI, § 13; Evid. Code, §§ 353, 354.) " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) " ' "Prejudice is not presumed and the burden is on the appellant to show its existence." ' " (*McIntyre v. The Colonies-Pacific, LLC* (2014) 228 Cal.App.4th 664, 675.)

B

*Bank Records*

We begin with the order excluding Senter Road's bank records. As noted, the court granted Senter Road's motion in limine excluding bank records showing that four cash deposits totaling $106,600 were made into its bank account. These included a $20,000 deposit on June 9, 2012, a $20,000 deposit on June 11, 2012, a $33,600 deposit on December 11, 2012, and a $33,000 deposit on February 1, 2013.

Ba contends the court erred in excluding these records because a jury could infer the deposits reflected in the records were kickback payments from Tommy. According to Ba, the existence of a kickback scheme "would have supported [her] argument that [Senter Road] had knowledge of the nightclub." Although Ba does not state as much, such knowledge presumably would have tended to prove that Senter Road's alleged negligence was the proximate cause of Ba's harm—an element of her negligence claim. (See *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1083.)

Senter Road asserts the bank records were irrelevant and properly excluded because any inference of a kickback scheme was speculative. In the alternative, Senter Road claims the court correctly excluded the records because their admission would have unduly prejudiced Senter Road by permitting the jury to consider its wealth when deciding its liability.

"Except as otherwise provided by statute, no evidence is admissible except relevant evidence." (*People v. Babbitt* (1988) 45 Cal.3d 660, 681 (*Babbitt*), citing Evid. Code, § 350.) " 'Relevant evidence' means evidence … having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) " 'The test of relevance is whether the evidence tends " 'logically, naturally, and by reasonable inference' to establish material facts ...." ' " (*Velasquez, supra*, 233 Cal.App.4th at p. 1211.)

"Relevant evidence includes *circumstantial* evidence that tends to establish a fact from which the existence or nonexistence of the fact in issue can be inferred. [Citation.] The modifier 'circumstantial' is used to emphasize the need to draw inferences from the evidence. [Citation.] 'An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the

13

action.' " (*Phillips v. Honeywell Internat. Inc.* (2017) 9 Cal.App.5th 1061, 1078.) "To be reasonable, an inference ' " 'cannot be based upon suspicion, imagination, speculation, surmise, conjecture or guesswork.' " ' " (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1113.)

" 'Speculative inferences that are derived from evidence cannot be deemed to be relevant to establish the speculatively inferred fact in light of Evidence Code section 210, which requires that evidence offered to prove or disprove a disputed fact must have a tendency *in reason* for such purpose.' " (*Babbitt, supra*, 45 Cal.3d at p. 681, italics added; see also *People v. Morrison* (2004) 34 Cal.4th 698, 711 ["Evidence is irrelevant … if it leads only to speculative inferences."]; *People v. Stitely* (2005) 35 Cal.4th 514, 549–550 ["Speculative inferences are, of course, irrelevant."].) Therefore, "[a] trial court does not abuse its discretion by excluding evidence that produces only speculative inferences." (*People v. Nieves* (2021) 11 Cal.5th 404, 445.)

Applying these standards, we conclude the trial court did not abuse its discretion in finding the inference of a kickback scheme was speculative and excluding the bank records as irrelevant. Neither the bank records themselves nor any other evidence in the appellate record indicates that Tommy was the source of the four cash deposits that were made into Senter Road's bank account. There also is no evidence in the record linking the four deposits at issue to any purported kickback scheme. In fact, there is no evidence suggesting Senter Road was even aware, or potentially aware, of the nightclub prior to the property inspection, let alone that it was a participant in a kickback scheme. Because the deposits could have come from any number of possible sources, their admission could give rise to nothing more

14

than a speculative inference of a kickback scheme. Such evidence is irrelevant and properly excluded.[6] (*Babbitt, supra,* 45 Cal.3d at p. 681.)

In her reply brief, Ba argues the court's ruling was erroneous because Senter Road's motion in limine "sought to eliminate a whole theory of liability," namely her theory that Senter Road was engaged in a joint venture with Tommy. (*Pellegrini v. Weiss* (2008) 165 Cal.App.4th 515, 530 ["in limine motions are disfavored in cases in which they are used … to serve as a substitute for a dispositive statutory motion"].) This argument is forfeited because Ba did not present it in her opening brief. (*Julian, supra,* 35 Cal.4th at p. 761, fn. 4.) The argument is meritless as well. The motion in limine was not the functional equivalent of a dispositive motion, as it did not seek to preclude Ba from pursuing her negligence claim or even a particular theory of liability. Instead, it sought " ' "to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party." ' " (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593.) That is the intended purpose of a motion in limine. (*Ibid.*; *Pellegrini,* at p. 530.)

Ba also argues that Senter Road could have disclosed the source of the cash deposits, thus confirming (or, of course, disproving) the inference she hoped to establish with the bank records. She states she sought such information while taking Lu's deposition, but was unable to obtain the information because Lu's counsel instructed him not to answer the deposition question.

---

[6] The mere fact that the deposits were made during the period in which the nightclub was in operation does not make the inference less speculative. According to the bank records, substantial cash deposits—which Ba does not acknowledge in her appellate briefs—were also made before the nightclub opened and after it shut down.

Perhaps Senter Road could have disclosed the source of its deposits to its litigation opponent. But Ba makes no argument that Senter Road was under any legal obligation to do so. Further, to the extent Ba was dissatisfied with the discovery she received, she had avenues to pursue more fulsome responses in the trial court. For instance, she could have filed a motion to compel answers to her deposition questions (Code Civ. Proc., § 2025.480, subd. (a)), and, if the witness continued to withhold discoverable information notwithstanding a court order compelling an answer, she could have filed a motion seeking sanctions for misuse of the discovery process (*id.*, §§ 2023.010, subd. (d), 2023.030, subds. (b)–(d)). Ba does not provide us any citation to the appellate record establishing whether she took these steps.

More importantly, none of these discovery issues are relevant to the question presented on appeal—that is, whether the trial court abused its discretion in excluding Senter Road's bank records on relevance grounds. For the reasons previously stated, we conclude the court properly found the bank records gave rise to purely speculative inferences and, therefore, the bank records were inadmissible.

C

*Gang Evidence*

Next, we consider the trial court's admission of evidence concerning Viet's membership in, or association with, the SVN gang. The court denied Ba's motion in limine seeking to exclude the gang evidence as irrelevant and unduly prejudicial under Evidence Code section 352.

The court did not abuse its discretion in admitting the gang evidence, which was probative to establish that Viet was comparatively negligent. Comparative fault, or comparative negligence, is a defense in a negligence action. (2 Schwing, Cal. Affirmative Def. (2d ed. 2020) § 48:16 ["Without

16

question, comparative and contributory negligence is a defense in actions that are founded in negligence"].) Under comparative fault principles, a "plaintiff's recovery is … diminished *to the extent* that his own actions [are] responsible for his injuries." (*Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 816.) The defense can be asserted against a decedent's heirs in a wrongful death action. (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 284.) "Thus, if the decedent had been comparatively negligent, a wrongful death judgment will be reduced proportionately." (*Ibid.*)

Senter Road asserted a comparative fault defense in its answer to the complaint. During trial, evidence was elicited that Viet came to the Sound Image nightclub with Nguyen, an associate of the SVN gang. There was evidence that Nguyen got into a confrontation with members of the EVO gang and was thrown out of the nightclub—events that were followed by an exchange of gunfire during which Viet was killed. A jury could reasonably infer from such evidence that the conflict between the gang members was, at minimum, causally related to Viet's death. A jury could also reasonably infer that, to the extent Viet was a member, a former member, or an associate of SVN, he was surely aware of his companion's association with SVN, yet he nonetheless chose to accompany him to the nightclub where other gang members congregated and the potential for violent conflict existed. (See *People v. Montes* (1999) 74 Cal.App.4th 1050, 1056 ["When rival gangs clash today, verbal taunting can quickly give way to physical violence and gun fire. No one immersed in the gang culture is unaware of these realities[.]"].) Because these inferences tend to establish Viet's comparative negligence, the court did not abuse its discretion in finding the gang evidence was relevant.

The trial court also did not abuse its discretion in finding that the probative value of the gang evidence was not substantially outweighed by

other factors such as the danger of undue prejudice. Undoubtedly, "gang evidence 'may have a highly inflammatory impact on the jury,'" especially when the evidence pertains to a defendant in a criminal case. (*People v. Schultz* (2020) 10 Cal.5th 623, 670.) But here, we discern no such inflammatory impact. The gang evidence did not relay to the jury any crimes or violent acts perpetrated by members of the SVN gang. Further, evidence that Viet—the victim of a possible gang-related shooting—voluntarily accompanied a gang associate to a nightclub filled with other gang members was relevant to whether Viet was comparatively negligent. Given these facts, we conclude the court did not abuse its discretion in admitting the gang evidence. (See *Rauda v. City of Los Angeles* (C.D.Cal. 2010) 2010 WL 11549632, at *2 [denying motion in limine seeking to exclude evidence of shooting victim's gang affiliation in wrongful death case, notwithstanding claims that such evidence was unduly prejudicial]; accord *People v. Williams* (1997) 16 Cal.4th 153, 194 [gang evidence was admissible where it "tended to establish, among other things, that the victim appeared to be a member of a gang which was a deadly rival of defendant's gang"].)

Even if the court had erred in denying Ba's motion in limine, we would conclude the asserted error did not result in a miscarriage of justice. The gang evidence was somewhat scant and, as just discussed, it did not focus on any violent or criminal acts perpetrated by the SVN gang.[7] Further, both of the law enforcement officers who testified about the SVN gang stated they could not determine from Viet's tattoo whether he was a member, an associate, or a dropout of the SVN gang. One of the officers even testified that his investigation led him to believe Viet was *not* a member of SVN at the

---

[7] Senter Road designated a gang expert as a witness, but did not call the gang expert to testify at trial.

time of his death. Because the evidence of Viet's membership in the SVN was relatively sparse and equivocal, Ba has not demonstrated a reasonable likelihood that the court's in limine ruling affected the judgment.

D

*Lease Agreement*

We turn to the court's admission of the unredacted lease agreement between Senter Road and Tommy. As noted, the lease agreement had a provision stating Senter Road was not liable for any injury to Tommy's invitees or customers. The court denied Ba's request to redact the provision.

On appeal, Ba claims the exemption provision was "inapplicable" and there was "no reason to admit it." The precise contours of Ba's appellate argument are unclear. But, as best we can tell, she appears to assert the trial court erred in finding that the exemption provision was relevant to prove or disprove a fact of consequence to the determination of the action.

Senter Road responds that the lease agreement contained various provisions that were relevant to the negligence claim, including whether Tommy's use of the warehouse unit as a nightclub was permitted, whether the lease allowed Tommy to renovate the unit, and the circumstances under which Senter Road was authorized to terminate Tommy's lease. These arguments are largely, if not entirely, nonresponsive to Ba's claim of error, which focuses on a single provision in the lease agreement—the exemption provision.

We need not decide whether the exemption provision was relevant because, assuming it was irrelevant, the court's failure to redact the exemption provision did not result in a miscarriage of justice. The sole signatories to the lease agreement were Senter Road, Tommy, and his cotenant—not Viet, Ba, or any other third party. Therefore, as can be

19

expected, the exemption provision by its plain terms does not purport to limit any liability owed by Senter Road *to third parties*, as opposed to the liability it might owe to the other lease signatories. (See *Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1070 [exculpatory clause in commercial lease agreement "clearly" did not apply to non-signatories].)

Further, the exemption provision was never referenced at trial. No party asked any witness about the exemption provision or addressed the exemption provision in their opening or closing arguments to the jury. Given these facts, it seems unlikely that redaction of the exemption provision would have resulted in a more favorable outcome for Ba. (*People v. Nelson* (2011) 51 Cal.4th 198, 214–215 [any error in admitting evidence "was clearly harmless" where the evidence was not referenced except during closing argument and, even then, the prosecutor "did not argue to the jury" that the evidence was probative of guilt].)

Ba argues prejudice can be discerned from the juror declarations she filed with her motion for a new trial and her request for reconsideration of her motion for a new trial. Senter Road responds that the juror declarations do not establish prejudice because they were inadmissible under Evidence Code section 1150. We agree with Senter Road.

Evidence Code section 1150, subdivision (a), provides as follows: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. *No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined.*" (Italics added.)

20

Under Evidence Code section 1150, juror affidavit statements are inadmissible if they disclose " ' "the subjective reasoning processes of the individual juror[.]" ' " (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1683.) "Likewise, evidence about a jury's 'subjective *collective* mental process purporting to show *how* the verdict was reached' is inadmissible to impeach a jury verdict." (*Ibid.*; see *People v. Romero* (1982) 31 Cal.3d 685, 695 [" 'The courts have been firm … in precluding affidavits which do no more than characterize … the state of mind of other members of the jury' "].) Further, " '[t]he subjective quality of one juror's reasoning is not purged by the fact that another juror heard and remembers the verbalization of that reasoning.' " (*Mesecher*, at p. 1683.) Thus, "[t]he statute may be violated not only by the admission of jurors' testimony describing their own mental processes, but also by permitting testimony concerning statements made by jurors in the course of their deliberations." (*People v. Hedgecock* (1990) 51 Cal.3d 395, 418–419; see *Guernsey v. City of Salinas* (2018) 30 Cal.App.5th 269, 283 (*Guernsey*) [" ' "[W]hen a juror in the course of deliberations gives the reasons for his or her vote, the words are simply a verbal reflection of the juror's mental processes. Consideration of such a statement as evidence of those processes is barred by Evidence Code section 1150." ' "].)

The juror declarations filed with Ba's post-trial motions clearly run afoul of Evidence Code section 1150. They purport to describe unidentified jurors' statements verbalizing their subjective mental processes—namely, why other jurors should vote to find Senter Road was not negligent. Because this is precisely the type of evidence that Evidence Code section 1150 forbids, the declarations cannot be used to establish prejudice. (*Guernsey, supra*, 30 Cal.App.5th at pp. 283–284 [statements in juror affidavits concerning impact of jury instruction were inadmissible to establish prejudice in a negligence

21

case]; *In re Hansen* (2014) 227 Cal.App.4th 906, 928 [declining to consider juror declarations in assessing prejudice from instructional error because the "documents purport[ed] to reflect the jury's reasoning and mental impressions regarding their verdict"]; accord *Bly-Magee v. Budget Rent-A-Car Corp.* (1994) 24 Cal.App.4th 318, 325–326 [jury affidavits discussing confusing effect of jury instruction in negligence case were inadmissible].)

Even if we were to consider the juror declarations, we would still conclude that Ba has not demonstrated prejudice. The juror declaration Ba filed with her new trial motion states the jury was divided on the first special verdict question (with eight votes finding Senter Road was not negligent and four votes finding it was negligent). It then states that "[a]fter lengthy deliberations, one of the jurors started going through the commercial lease agreement," "some of the jurors" referenced the exemption provision as a reason Senter Road should be found not negligent, and another vote was taken "[s]hortly after," which resulted in a 10–2 vote that Senter Road was not negligent. The second juror declaration states, with similar vagueness, that "jurors were divided on the first question," "[s]ome of the jurors" stated the exemption provision required a finding that Senter Road was not negligent, and "[s]hortly after … some of the jurors changed their vote" resulting in a finding that Senter Road was not negligent.

These inadmissible declarations, even if credited, show that eight jurors voted to find that Senter Road was not negligent before the exemption provision was even discussed—just one vote shy of the threshold necessary to find that Senter Road was not liable. Neither declarant averred that he or she was one of the unidentified jurors who changed their votes and, if so, whether the exemption provision was material to his or her decision to switch votes. In fact, neither declarant stated that the switching jurors articulated

any reason or reasons why they switched their votes. Further, the declarations shed no light on how the jury would have answered any of the other outstanding special verdict questions, including whether Senter Road's alleged negligence was a substantial factor in causing Ba's harm and whether the conduct of the shooter(s) was a superseding cause of Ba's harm.

For all these reasons, we conclude Ba has failed to establish that the admission of the unredacted lease agreement resulted in a miscarriage of justice.[8]

IV

DISPOSITION

The judgment is affirmed. 2000 Senter Road, LLC is entitled to its costs on appeal.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

DO, J.

---

[8] Given our determination that the evidentiary rulings do not compel reversal of the judgment, we do not consider Senter Road's argument that it owed no legal duty to evict Tommy, hire security guards, or alert law enforcement about the nightclub.